# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Abita Brewing Co., L.L.C. | * |
| | * |
| *Plaintiff,* | * |
| | * |
| v. | *   Civil Action No. |
| | * |
| Fat Ass Ranch and Winery, LLC, Fat Ass Ranch | * |
| and Brewery, LLC, New Fat Ass Co, LLC, | * |
| New Fat Ass Holding Co, LLC | * |
| Steven Johnson, Gail McCulloch, and | * |
| Jennie McCulloch | * |
| | * |
| *Defendants.* | * |
| | * |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Abita Brewing Co., L.L.C. ("Abita"), and for its Complaint against Defendants Fat Ass Ranch and Winery, LLC, Fat Ass Ranch and Brewery, LLC, New Fat Ass Co, LLC, New Fat Ass Holding Co, LLC, Steven Johnson, Gail McCulloch, and Jennie McCulloch  (Defendants collectively referred to herein as "FARW Group") states as follows:

### The Parties

1. Abita Brewing Co. L.L.C. ("Abita") is a limited liability company organized under the laws of Louisiana, whose address is 21084 Highway 36, Covington, Louisiana, 70433.

2. Upon information and belief, Defendant Fat Ass Ranch and Winery, LLC ("FARW") is a limited liability company organized under the laws of Texas, with its principal place of business at 153 East Main Street, Fredericksburg, TX, 78624.  FARW may be served through its registered agent for service of process, Gail McCulloch at 153 East Main Street,

Fredericksburg, TX, 78624.

3. Upon information and belief, Defendant Fat Ass Ranch and Brewery, LLC ("FARB") is a limited liability company organized under the laws of Texas, with its principal place of business at PO Box 193, Fredericksburg, TX, 78624. FARB may be served through its registered agent for service of process, Gail McCulloch at 51 Elgin Behrends Road, Fredericksburg, TX, 78624.

4. Upon information and belief, Defendant New Fat Ass Co, LLC ("New Fat Ass") and Defendant New Fat Ass Holding Co, LLC ("New Fat Ass Holding") are each a limited liability company organized under the laws of Texas, having the same principal office and/or mailing address at PO Box 161585, Austin, TX, 78716. Both New Fat Ass and New Fat Ass Holding were formed on the same day, October 5, 2023, naming the same registered agent and organizer, and may be served through the same current registered agent for service of process, Karl Shackelford at 1608 West 34th Street, Austin, TX, 78703. The Texas Secretary of State records list Defendant, Steven Johnson, as the sole member and as the sole director for each of New Fat Ass and New Fat Ass Holding; and lists his address as the same principal office and/or mailing address for New Fat Ass and New Fat Ass Holding.

5. Upon information and belief, one or more of Steven Johnson, New Fat Ass and New Fat Ass Holding are the successor in interest to FARW and FARB, succeeding to all of the business and assets of FARW and FARB.

6. Upon information and belief, Defendant Steven Johnson is an individual residing in the state of Texas.

7. Upon information and belief, Defendant Gail McCulloch is an individual residing in the state of Texas.

8.  Upon information and belief, Defendant Jennie McCulloch is an individual residing in the state of Texas.

9.  Upon information and belief, Gail McCulloch and Jennie McCulloch, are husband and wife and owned FARW and FARB at least until such time as Steven Johnson, individually or through one or more of New Fat Ass and New Fat Ass Holding succeeded to and/or acquired the business and/or all or substantially all of the assets of FARW and FARB.

10.  Upon information and belief, Steven Johnson succeeded to, and/or acquired direct (or indirect through New Fat Ass and/or New Fat Ass Holding) ownership or control of the business and/or all or substantially all of the assets of FARW and FARB. See attached Exhibit A-1 and A-2.

## Jurisdiction and Venue

11.  This is an action arising out of federal trademark and unfair competition law (15 U.S.C. § 1051 et. seq.) and Louisiana law. This Court has subject matter jurisdiction over Abita's claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over claims arising from state law under 28 U.S.C. § 1367(a).

12.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2).

## Facts Common to All Claims for Relief

### A. Abita's PURPLE HAZE Trademarks

13.  Abita is the owner of U.S. Registration No. 2,282,464 of the trademark PURPLE HAZE, in standard characters, for "beer, lager" issued on October 5, 1999 ("the '464 Registration"). The '464 Registration claims a date of first use at least as early as November 25, 1994 and a date of first use in commerce at least as early as January 9, 1995. The '464 Registration achieved the status of incontestability upon the filing of a combined Section 8&15 affidavit in

2004. The '464 Registration was renewed in 2009, was renewed a second time in 2018, and remains in full force and effect today. A true copy of a current printout from the electronic database records of the USPTO for the '464 Registration is attached as Exhibit B.

14. Abita is the owner of U.S. Registration No. 3,986,281 of the trademark PURPLE HAZE, in standard characters, for "shirts, caps, headwear" issued on June 28, 2011 ("the '281 Registration"). The '281 Registration claims a date of first use and a date of first use in commerce at least as early as December 31, 1993. The '281 Registration achieved the status of incontestability upon the filing of a combined Section 8&15 affidavit in 2016 and remains in full force and effect today. A true copy of a current printout from the electronic database records of the USPTO for the '281 Registration is attached as Exhibit C.

15. Abita is the owner of U.S. Registration No. 3,986,282 of the trademark PURPLE HAZE, in standard characters, for "beverageware" issued on June 28, 2011 ("the '282 Registration"). The '282 Registration claims a date of first use and a date of first use in commerce at least as early as December 31, 1993. The '282 Registration achieved the status of incontestability upon the filing of a combined Section 8&15 affidavit in 2016 and remains in full force and effect today. A true copy of a current printout from the electronic database records of the USPTO for the '282 Registration is attached as Exhibit D.

16. By virtue of Abita's substantially exclusive and continuous delivery of the goods described herein under the PURPLE HAZE trademark, the PURPLE HAZE trademark holds for Abita exceptional value and widespread recognition in the alcohol beverage industry, and persons familiar with such goods have come to recognize the PURPLE HAZE trademark as an indication of a unique brand of goods. Consequently, the PURPLE HAZE trademark constitutes a valuable asset of Abita, and Abita has established widespread recognition and goodwill in its PURPLE

HAZE trademark.

17. By virtue of Abita's substantially exclusive and continuous delivery of the goods described herein under the PURPLE HAZE trademark, persons familiar with such goods have come to readily recognize the PURPLE HAZE trademark as a distinctive designation of the origin of Abita's goods.

18. By virtue of Abita's substantially exclusive and continuous use of its PURPLE HAZE trademark in connection with the goods described herein, Abita, in addition to Abita's registered rights under, and arising under, the '464 Registration, the '281 Registration and the '282 Registration (collectively, the "PURPLE HAZE Registered Rights"), has acquired and is the sole owner of common law, state statutory, and other trademark, service mark, and related rights to its PURPLE HAZE trademark.

### B. Abita's History of Policing FARW Group

19. On or about November 29, 2021, FARW filed an application with the USPTO to register the trademark PURPLE HAZE in standard characters, in International Class 033 for goods identified as "wine," trademark application Serial No. 97/145,896 ("the '896 Application"). On or about January 21, 2022, Abita sent a demand letter to FARW's counsel of record for the '896 Application regarding FARW's infringing use of the term PURPLE HAZE, but Abita also commenced settlement negotiations with and through that counsel of record for the '896 Application. On or about February 14, 2022, Abita filed a Letter of Protest to the '896 Application. On or about September 13, 2022, the USPTO issued a Nonfinal Office Action, refusing registration of the '896 Application because of a likelihood of confusion with Abita's '464 Registration for PURPLE HAZE. No settlement between Abita and FARW was ever reached. On or about March 29, 2023, the USPTO issued a Notice of Abandonment with respect to the '896 Application.

20. On or about March 30, 2023, ***one day after the USPTO issued a Notice of Abandonment with respect to the '896 Application***, Defendant Gail McCulloch, the then owner of FARW (or owner together with his wife, Defendant Jennie McCulloch) filed an application with the USPTO to register the trademark PURPLE DAZE in standard characters, in International Class 033 for goods identified as "wine," trademark application Serial No. 97/865,258 ("the '258 Application"). On or about July 31, 2023, Abita filed a Letter of Protest to the '258 Application. Abita again commenced settlement negotiations with counsel of record for the '258 Application (albeit it was different counsel from the counsel of record for the previously abandoned '896 Application) .

21. Settlement discussions occurred over many months via communications between Abita's counsel and counsel of record for the '258 Application. Abita delivered a final form of the settlement agreement on or about September 4, 2024. A month later, Abita abruptly learned from opposing counsel that the settlement agreement would not be signed by his client.

22. Abita filed its Notice of Opposition to the '258 Application with the USPTO on October 15, 2024 (No. 91294570). The named applicant and Defendant herein, Gail McCulloch, did not file any response thereto. The USPTO issued a Notice of Default on December 5, 2024, and, again, the applicant did not respond thereto. The USPTO entered a judgement by default against the applicant and Defendant herein, Gail McCulloch, on January 15, 2025, sustaining Abita's opposition and refusing to register PURPLE DAZE.

23. No settlement agreement was ever signed between Abita and any one or more of Gail McCulloch, FARW or any of the FARW Group.

### C. FARW Group Continues To Violate Abita's Trademark Rights

24. One or more of the FARW Group has offered and continues to offer a product to

the alcohol beverage industry unlawfully using the PURPLE HAZE trademark (the "Unlawful Product"). A copy of a relevant page[1] from FARW's website appears below this paragraph.



25. As evidenced by the above, one or more of FARW Group has promoted and continues to promote the Unlawful Product as wine for sale and consumption.

26. One or more of FARW Group's commercial use of the PURPLE HAZE trademark has been, and continues to be, without authorization or permission from Abita of the PURPLE HAZE trademark.

27. One or more of the FARW Group has willfully infringed and continues to willfully infringe Abita's PURPLE HAZE trademark, and despite repeated requests, has refused to stop using the PURPLE HAZE trademark to sell and promote its Unlawful Product.

28. One or more of the FARW Group has indicated that they further plan to expand

---

[1] See https://fatassranch.com/shop/.

into the New Orleans market to market the PURPLE HAZE wine to fans of Louisiana State University.

29. FARW Group's acts outlined herein have caused, and/or are likely to cause, Abita to suffer irreparable injury to its business.

30. Abita will suffer a substantial loss of goodwill and reputation unless and until FARW Group is permanently enjoined from continuing the wrongful actions outlined herein.

31. FARW Group's continued use of the PURPLE HAZE Marks has created and will continue to create a likelihood of consumer confusion as to the source, origin, sponsorship, or affiliation of FARW Group's business with Abita. Such use results in FARW Group being unjustly enriched as a result of creating such confusion, and (among other harms to Abita) it harms Abita's goodwill by causing Abita not to be able to control how its brand is used and perceived by the public.

### First Cause of Action

**(Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)**

32. Plaintiff, Abita, repeats and incorporates by reference the allegations of paragraphs 1-31.

33. Abita is the senior user of the PURPLE HAZE trademark, and Abita's continuous use of its registered PURPLE HAZE trademark in connection with the goods described herein by reference to the PURPLE HAZE Registered Rights long predates the use by the Defendants, the FARW Group, of the term PURPLE HAZE for wine.

34. FARW Group's use of the term PURPLE HAZE with its wine product is confusingly similar to Abita's use of the term PURPLE HAZE with its goods described herein.

35. FARW Group's use of the term PURPLE HAZE is actionable use under 15 U.S.C.

§ 1114(1)(a) and thus likely to cause confusion, or to cause mistake or to deceive and so a violation of the PURPLE HAZE Registered Rights.

36. FARW Group's use of the term PURPLE HAZE is actionable activity under 15 U.S.C. § 1114(1)(b) and thus likely to cause confusion, or to cause mistake or to deceive and so a violation of the PURPLE HAZE Registered Rights.

37. Persons familiar with Abita's goods marketed under its registered PURPLE HAZE trademark, upon seeing advertisements for FARW Group's <u>highly similar</u> goods sold, distributed or provided under the <u>identical</u> term PURPLE HAZE, would be likely to believe, and would be justified in so believing, that such goods originated from Abita or were produced in association, connection or affiliation with, or under sponsorship, approval or authorization by, Abita. Thus, the term PURPLE HAZE, as used in connection with FARW Group's goods, would lead persons familiar with Abita's registered PURPLE HAZE trademark to believe that FARW Group's goods are provided or originated by, sold or distributed in association, connection or affiliation with, or under sponsorship, approval, authorization or license from Abita.

38. It is likely that customers, consumers and/or users familiar with Abita's registered PURPLE HAZE trademark would be likely to purchase, consume, or otherwise use FARW Group's goods believing them to originate from, be sponsored by, or be under license from Abita. Any defect, objection, fault, or adverse publicity in connection with FARW Group's goods sold, distributed or provided under the term or mark PURPLE HAZE would necessarily reflect on and seriously injure the reputation that Abita has established and enjoys for its PURPLE HAZE trademark and the PURPLE HAZE Registered Rights.

39. FARW Group's unauthorized use of the registered PURPLE HAZE trademark in connection with its advertising, promotion, and offering of wine is likely to cause confusion, or to

cause mistake or to deceive as to the affiliation, connection, or association between the parties or as to the source, origin, sponsorship or approval by Abita of such goods.

40. By FARW Group's unauthorized use of the term or mark PURPLE HAZE in connection with the advertising, promotion, and offering of wine, FARW has infringed and continues to infringe the registered PURPLE HAZE trademark in violation of §32 of the Lanham Act, codified at 15 U.S.C. §1114.

41. FARW Group's trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Abita's business, reputation, and goodwill, unless FARW Group's unlawful conduct is permanently enjoined by this Court.

42. At least in view of FARW Group's violations of the PURPLE HAZE Registered Rights, Abita is entitled to recover all damages sustained by FARW Group's actions, all profits realized by FARW Group through its infringing use of Abita's PURPLE HAZE trademark in connection with FARW Group's advertising, promotion, offering, sale or distribution of wine, and the costs of this action

43. Given the history and circumstances of this matter, including without limitation, FARW Group's series of actions in response to Abita's policing of the PURPLE HAZE Registered Rights, Abita is entitled to amounts in excess of actual damages as well as amounts in excess of FARW Group's profits as well as an award of reasonable attorneys' fees, all as allowed under 15. U.S.C. §1117(a) .

## Second Cause of Action

### (Unfair Competition under 15 U.S.C. § 1125(a)

44. Plaintiff, Abita, repeats and incorporates by reference the allegations of paragraphs

1-43.

45. Abita is the senior user of the PURPLE HAZE trademark, and Abita's continuous use of its PURPLE HAZE trademark in connection with the goods described herein long predates the use by the Defendants, the FARW Group, of the term PURPLE HAZE for wine.

46. FARW Group's use of the term PURPLE HAZE with its wine product is confusingly similar to Abita's use of the term PURPLE HAZE with its goods described herein.

47. FARW Group's use of the term PURPLE HAZE is unfair competition and actionable use under 15 U.S.C. § 1125(a) and thus likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of one or more of the FARW Group with Abita, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities.

48. Persons familiar with Abita's goods marketed under its PURPLE HAZE trademark, upon seeing advertisements for FARW Group's <u>highly similar</u> goods sold, distributed or provided under the <u>identical</u> term PURPLE HAZE, would be likely to believe, and would be justified in so believing, that such goods originated from Abita or were produced in association, connection or affiliation with, or under sponsorship, approval or authorization by, Abita. Thus, the term PURPLE HAZE, as used in connection with FARW Group's goods, would lead persons familiar with Abita's PURPLE HAZE trademark to believe that FARW Group's goods are provided or originated by, sold or distributed in association, connection or affiliation with, or under sponsorship, approval, authorization or license from Abita.

49. It is likely that customers, consumers and/or users familiar with Abita's PURPLE HAZE trademark would be likely to purchase, consume, or otherwise use FARW Group's goods believing them to originate from, be sponsored by, or be under license from Abita. Any defect,

objection, fault, or adverse publicity in connection with FARW Group's goods sold, distributed or provided under the term or mark PURPLE HAZE would necessarily reflect on and seriously injure the reputation that Abita has established and enjoys for its PURPLE HAZE trademark.

50. FARW Group's unauthorized use of the PURPLE HAZE trademark in connection with its advertising, promotion, and offering of wine is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association between the parties or as to the source, origin, sponsorship of approval by Abita of such goods.

51. By FARW Group's unauthorized use of the term or mark PURPLE HAZE in connection with the advertising, promotion, and offering of wine, FARW is engaged in actionable unfair competition and is in violation of §43(a) of the Lanham Act, codified at 15 U.S.C. §1125(a).

52. FARW Group's unfair competition and violations as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Abita's business, reputation, and goodwill, unless FARW Group's unfair competition and unlawful conduct is permanently enjoined by this Court.

53. At least in view of FARW Group's unfair competition and violations of 15 U.S.C. 1125(a), Abita is entitled to recover all damages sustained by FARW Group's actions, all profits realized by FARW Group through its use of Abita's PURPLE HAZE trademark in connection with FARW Group's advertising, promotion, offering, sale or distribution of wine, and the costs of this action

54. Given the history and circumstances of this matter, including without limitation, FARW Group's series of actions in response to Abita's policing of its PURPLE HAZE trademarks, Abita is entitled to amounts in excess of actual damages as well as amounts in excess of FARW Group's profits as well as an award of reasonable attorneys' fees, all as allowed under 15. U.S.C.

§1117(a).

### Third Cause of Action

**(Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law)**

55. Abita repeats and incorporates by reference the allegations of paragraphs 1-54.

56. FARW Group's conduct as alleged above constitutes trademark infringement, unfair competition, and deceptive trade practices and acts in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. §51:1401 *et seq*.

57. FARW Group's trademark infringement and unfair competition as alleged above have injured Abita in that Abita has suffered damage to its reputation and customer goodwill as a direct and proximate result of FARW Group's illegal conduct. In addition, FARW Group has been unjustly enriched by reason of its trademark infringement and unfair competition in that FARW Group has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

### PRAYER FOR RELIEF

WHEREFORE, Abita prays that a judgment be entered:

1. Permanently enjoining FARW Group and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from FARW Group, or in concert or participation with FARW Group (including, without limitation, any distributors of FARW Group's products), pursuant to the powers granted to this Court by 15 U.S.C. §1116 and La. R.S. §51:223.1, from:

    a. using the term or mark PURPLE HAZE (whether as a trademark or otherwise) and any confusingly similar or colorable imitations thereof in connection with any business, goods, or services of any one or more of FARW

Group; and,

  b. using the term or mark PURPLE DAZE (whether as a trademark or otherwise) and any confusingly similar or colorable imitations thereof in connection with any business, goods, or services of any one or more of FARW Group; and,

  c. using any trademark, service mark, name, logo, domain name, social media handle, or source designation of any kind whatsoever that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way whatsoever similar to, the trademarks, service marks, or logos of Abita which are, or which include, the term or mark PURPLE HAZE or fanciful presentations thereof or are likely to cause confusion, mistake, deception, or misunderstanding that any business, goods, or services of any one or more of FARW Group are the business, goods, or services of Abita, or are sponsored by, affiliated with, endorsed by, approved by, originate with or in any way related to Abita.

  2. Ordering an accounting for and award of damages resulting from the sale, offering for sale, distribution and marketing by any one or more of FARW Group for the infringing and unauthorized use of the PURPLE HAZE trademark and for all unfair competition, all as authorized by 15 U.S.C. §1117.

  3. Awarding Abita:

  a. a trebling of damages as authorized by 15 U.S.C. §1117;

  b. profits as authorized by 15 U.S.C. §1117;

  c. amounts in excess of profits as authorized by 15 U.S.C. §1117;

  d. reasonable attorneys' fees under 15 U.S.C. §1117; and,

    e. the costs of this action, as authorized by 15 U.S.C. §1117.

4. Granting Abita such other and further relief as a matter of law or equity as the Court may deem just and proper.

Dated: April 14, 2025.   Respectfully submitted,

    /s/ Rebecca D. Areaux
**RAYMOND G. AREAUX (#16792)**
**THEODORE (TODD) S. OWERS III (#27028)**
**REBECCA D. AREAUX (#38508)**
*Carver, Darden, Koretzky, Tessier,*
*Finn, Blossman & Areaux, L.L.C.*
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone:   (504) 585-3800
Facsimile:   (504) 585-3801
E-mail:   areaux@carverdarden.com
*Attorneys for Plaintiff*